**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190703-U

Order filed March 12, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* A.T., J.T., and N.R., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Minors | ) | Rock Island County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal Nos.  3-19-0703, 3-19-0704, |
| Petitioner-Appellee, | ) | and 3-19-0705 |
| | ) | Circuit Nos.  14-JA-36, 14-JA-37, |
| | ) | and 14-JA-38 |
| v. | ) | |
| | ) | |
| Ndayumurushwa R. | ) | Honorable |
| | ) | Theodore G. Kutsunis, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Carter and Wright concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:  The trial court's finding that the father was unfit on the grounds of failing to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare was upheld as not against the manifest weight of the evidence. The finding that it was in the minors' best interest to terminate the father's parental rights was also upheld as not against the manifest weight of the evidence.

¶ 2        The respondent father, Ndayumurushwa R., appeals the finding that he is unfit to parent his children, the minors, A.T., J.T., and N.R., and the termination of his parental rights as to all three minors. We consolidated the appeals.

¶ 3                                              FACTS

¶ 4        Petitions for adjudication of wardship were filed on June 27, 2004, alleging that the minors, A.T., J.T., and N.R., were neglected due to an environment injurious to their welfare, primarily due to multiple domestic violence incidents. The minors were adjudicated neglected on August 19, 2014, pursuant to section 2-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2014)). Counsel was appointed to represent the father on September 26, 2014. The father's primary language was not English, so a Kirundi speaking interpreter was appointed for all court proceedings. The permanency reports filed by the Illinois Department of Children and Family Services (DCFS) also indicate the language barrier and state that an interpreter was provided for meetings, visits, and services. The trial court entered a dispositional order on October 27, 2014, finding that reasonable efforts had been made but the reasons for removal had not been eliminated. Guardianship was placed with DCFS and visitation was to be at the discretion of DCFS and Bethany for Children & Families. Pursuant to that order, the father was ordered to attend and successfully complete parenting classes, obtain a substance abuse evaluation and follow any recommendations for treatment, attend and successfully complete anger management counseling, and attend and successfully complete domestic violence counseling. The DCFS visiting plan for the father, dated October 29, 2014, provided the father with a supervised one-hour visit once a week with all three minors.

¶ 5        The DCFS permanency hearing report dated April 9, 2015, stated that the father had satisfactory housing and employment. He was evaluated for substance abuse in January 2015 and

2

had started participating in the recommended group treatment one day a week for three hours in February 2015. He was also participating in weekly random urinalysis (UA) drops with a Breathalyzer, which were all negative. The father had not yet been referred for domestic violence counseling; he would be referred after substance abuse treatment was completed. The father successfully completed a parenting program on February 13, 2015. The report indicated that the father was participating in weekly two-hour visits with the minors and that the father's visitation was not increased because he was not the targeted return home parent. At the permanency hearing, which the father did not attend, the trial court found that the father had not made reasonable progress or reasonable efforts toward returning the minors home.

¶ 6        The October 7, 2015, permanency report indicated that the father had successfully completed his substance abuse treatment program on August 26, 2015. However, DCFS recommended continued random UA drops because the prior tests were scheduled tests and the father reported that he continued to drink beer. The father began domestic violence therapy in May 2015. The father continued to visit with the minors once a week for two hours. The visits remained at two hours because he was not the targeted return home parent and he was not in a position to have the children live with him or care for them on his own. The father was not present at the October 22, 2015, court hearing. Also, the father's appointed attorney filed a motion to withdraw on October 22, 2015. She stated that the father's last in-person court appearance was on October 27, 2014, and that she mailed the father all the correspondence filed with the court, but the father had no contact with counsel since that date. However, she withdrew the motion to withdraw on October 30, 2015, when the father appeared in court and wished to continue to be represented. The trial court's permanency order found that the father had made reasonable efforts but had not made

3

reasonable and substantial progress toward the minors returning home. The court noted that the father had made minimal progress.

¶ 7    The April 8, 2016, permanency report noted that the father continued to have unstable housing and that it was unclear if he was working full time but that he indicated that he had a job. The father had not been consistent with therapy in the previous six months, so his individual case had been closed. Also, in the previous six months, the father was inconsistent with his weekly visits with the minors and often missed visits without calling to cancel. After missing three visits in a row in January 2016, the father was informed that he would need to meet with the caseworkers before visits would resume. He called the caseworker on March 18, 2016, to resume visits. He was given weekly one-hour supervised visits on Saturdays, with the condition that he call the Friday before to confirm his visit. The report indicates that the father agreed to the arrangement but then failed to call to confirm his first visit on March 19, 2016. The April 21, 2016, permanency order found that the father had not made reasonable progress or efforts toward the return of the minors. The father was not present in court.

¶ 8    The September 26, 2016, DCFS permanency report indicated that the caseworker had no contact with the father during the reporting period. The father was offered weekly supervised visits with the minors but had not had any contact with DCFS during the reporting period. The father was not present in court for the October 27, 2016, permanency review hearing. Again, the court found that the father had not made reasonable progress or efforts toward the return of the minors.

¶ 9    The father's appointed attorney filed another motion to withdraw as counsel on April 18, 2017, stating that she had not had contact with the father since his last in-court appearance in October 2015 and that DCFS had not had contact from the father during the past six months. The April 18 permanency report stated that the caseworker had not had any contact with the father and

4

that he had not had any visits with the minors. The father was not present in court for the permanency review hearing on April 21, 2017, and again the court found that the father had not made reasonable progress or efforts toward the return of the minors. The motion to withdraw was allowed.

¶ 10    The July 7, 2017, permanency review report again reported no contact with the father. The father was present in court on July 21, 2017, and his attorney was reappointed at that time. However, there was no interpreter present, so the hearing was continued. It was continued again on August 25, 2017, and the father was not present because there was a miscommunication and he was not transported from the jail. He was present for another continued hearing but then not present at the permanency review hearing on December 21, 2017. His attorney reported that he was in federal custody. The father was again found to have not made reasonable progress or efforts toward the return of the minors. The father's attorney filed another motion to withdraw on March 8, 2018. She indicated that the only two times that the father had been present in court since October 30, 2015, were the two recent appearances when he was in the Rock Island County jail. She indicated that the father had been taken into federal custody in late 2017 but was released in early 2018. The father had not communicated with her since his release and DCFS did not have a current address or telephone number. The motion to withdraw was granted.

¶ 11    There was no change in the father's status in the June 15, 2018, permanency review report, but DCFS recommended changing the permanency goal from return home to substitute care pending a determination of termination of parental rights. The trial court changed the goal due to lack of efforts and progress by the father and the mother of the minors. The father did not attend that hearing. On October 5, 2018, the State filed supplemental petitions to terminate the parental rights as to all three minors. With respect to the father, the petition alleged that he had: abandoned

the minors (750 ILCS 50/1(D)(a) (West 2018)); failed to maintain a reasonable degree of interest, concern or responsibility as to the minors' welfare (*id.* § 1(D)(b)); deserted the minors (*id.* § 1(D)(c)); failed to make reasonable efforts to correct the conditions for removal during three separate nine-month periods (July 2, 2016 to April 2, 2017, April 3, 2017 to January 3, 2018, and January 4, 2018 to October 4, 2018 (*id.* § 1(D)(m)(i)); and failed to make reasonable progress toward the return of the minors during the same three time periods (*id.* § 1(D)(m)(ii)).

¶ 12        Notice of the petition to terminate was mailed to the address that had been provided for the father since at least April 9, 2015, and he was present in court for the first appearance on the petition on October 11, 2018. Counsel was reappointed to represent the father. The DCFS Family Service Plan dated September 27, 2018, indicated that, as of that date, the father was being held in the Rock Island County jail. The caseworker had not had any contact with the father during the reporting period, but she had sent a certified letter to his last known address on March 30, 2018.

¶ 13        The fitness hearing began on May 6, 2019, with two interpreters present. The trial court took judicial notice of the permanency reports and service plans. Sherry Koeperich testified that she was a caseworker for DCFS and was the minors' caseworker from October 2016 until October 2018. Koeperich testified that the father's last visit with the minors was in January 2016. Prior to that date, Koeperich believed the visits were usually at McDonalds, but the father stopped coming for the visits. When she took over the case in October 2016, the father was not attending counseling or substance abuse treatment. Koeperich testified that her only contact with the father after she took over the case was after she learned that the father was being held in the Rock Island County jail in August 2017. She and a former caseworker went to talk to the father, and Koeperich left the father her card with her name and telephone number. They communicated in English, and there was no interpreter present. The father asked about the minors and seemed interested in them, but

6

never contacted Koeperich after he was released. Koeperich did not have a telephone number for the father. She mailed him one letter at his last known address in March 2018; that was also the address where he was listed as receiving public aid benefits. Koeperich testified that she was aware that the father was living in Rock Island and had been involved with another woman who had been under DCFS investigation. Koeperich did not try to contact him at that woman's address.

¶ 14 The father testified that he stopped working on services after 2015 because he had finished his family and alcohol evaluation classes. He testified that he stopped visiting with the minors in January 2016 because he did not know where they were staying and DCFS did not bring the minors to him anymore. The father testified that he did not call the DCFS office because he did not know who to call. The father recalled Koeperich visiting him in jail but testified that he did not know what she was telling him because she did not bring an interpreter. The father acknowledged receipt of Koeperich's business card but testified that he was not able to call because he did not speak English. It was not possible for the father to visit the minors at the mother's home because of prior incidents of violence with the mother's paramour. When he did participate in services, there was always an interpreter. The father testified that he understood some English, but he only could speak some words and could not explain himself in English.

¶ 15 The trial court found by clear and convincing evidence that the State met its burden of proving all five grounds of unfitness as alleged in the termination petition as to the father. The trial court acknowledged the father's initial involvement and cooperation with DCFS. However, apparently due to some domestic violence issues with the mother and her paramour, the trial court found that the father quit visiting the minors in early 2016, even though the evidence was clear that he was encouraged to visit. The trial court questioned the father's excuse that he did not know what he needed to do when he had initially engaged in services with no difficulties in

7

communication or understanding. The trial court concluded that the father's failure to visit and engage in services after January 2016 showed by clear and convincing evidence that he abandoned the minors, failed to maintain a reasonable degree of interest, concern, or responsibility to the minors' welfare, and that he failed to put forth reasonable efforts for the time periods identified in the petition. The trial court also found by clear and convincing evidence that the father failed to make reasonable progress to correct the conditions which led to the removal for the same applicable time periods.

¶ 16    At the best interest hearing, the trial court took judicial notice of the best interest report filed by DCFS. The report indicated that all three minors had been in foster care for five years. A.T. was 12 years old and J.T. was 10 years old, and they had been placed together in the same foster home since February 2, 2015. It was an adoptive home and the foster parents had signed permanency agreements. The foster parents were meeting A.T. and J.T.'s needs for food, clothing and shelter. The foster parents were also trying to keep A.T. and J.T. connected to their culture by keeping in contact with extended family, including the mother in activities, and cooking cultural dishes. A.T. and J.T. expressed wishes to remain with the foster parents through adoption. N.R., who was 8 years old, had been with his foster parents since he was placed into foster care five years earlier. N.R.'s foster home was also an adoptive home and the foster parents had signed a permanency agreement. The foster parents were meeting all of N.R.'s needs for food, clothing, and shelter, and they were also keeping N.R. in contact with his extended family and siblings. N.R. wished to be adopted by his foster parents. The father testified that he lived in a two-room house with a relative and had a job. He wished to have the minors returned to him.

¶ 17    The trial court acknowledged the cultural difference and language barriers in the case. However, after considering the relevant statutory factors, the trial court found that it was in the

8

best interest of each of the minors that the father's parental rights be terminated. The father appealed.

¶ 18                                    ANALYSIS

¶ 19        The father contends that the trial court's finding of unfitness was against the manifest weight of the evidence. The father contends that he encountered some legal issues but that he had made reasonable efforts and progress under the circumstances to stay involved in the minors' lives. The State contends that the evidence was sufficient to show that the father was unfit.

¶ 20        Section 2-29 of the Juvenile Court Act sets forth a two-step process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2018). The first step is for the court to find, by clear and convincing evidence, that a parent is an unfit person as defined in section 1 of the Adoption Act. *In re M.I.*, 2016 IL 120232, ¶ 20. Section 1(D) of the Adoption Act defines an unfit person as "any person whom the court shall find to be unfit to have a child." 750 ILCS 50/1(D) (West 2018). The statute defines a number of grounds of unfitness, and evidence of unfitness based on any ground enumerated in section 1(D) of the Adoption Act is enough to support a finding of unfitness, even where the evidence may not be sufficient to support another ground. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). If the parent is found unfit, the second step in the process is to consider the best interest of the child. *M.I.*, 2016 IL 120232, ¶ 20.

¶ 21        The termination of parental rights is an extraordinary measure; therefore, the State must prove its allegations of unfitness by clear and convincing evidence. *In re Michael M.*, 364 Ill. App. 3d 598, 606 (2006). On appeal, we will only reverse the trial court's finding of unfitness if the finding was against the manifest weight of the evidence. *Id.*

¶ 22        One basis for the finding of unfitness was that the father failed to maintain a reasonable degree of interest, concern or responsibility as to the minors' welfare. 750 ILCS 50/1(D)(b) (West

9

2018). Any of the three elements—interest, concern, or responsibility—may be considered on its own as a basis for unfitness. *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004). When evaluating these elements, a trial court should focus on a parent's reasonable efforts to visit and maintain contact with the minor and consider any circumstances that may have made it difficult for the parent to visit, communicate with or otherwise show interest in the minor. *Id.* Alternative methods of communication, such as letters, telephone calls, and gifts, can demonstrate a reasonable degree of interest, concern, or responsibility, depending on the circumstances. *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 35. However, to find a parent fit, the parent's level of interest, concern, or responsibility must be objectively reasonable. *Id.*

¶ 23        The father, as the trial court noted, initially complied with the directives in his service plan. The father had satisfactory housing and employment in 2015. He attended and successfully completed parenting classes by February 2015, he obtained a substance abuse evaluation in January 2015, he completed his substance abuse treatment program in August 2015, he began counseling in May 2015, and he visited with the minors until January 2016. However, after January 2016, the father had no further visits with the minors, did not comply with random UA drops, and was dropped from counseling for nonattendance. The father contacted the caseworker on one occasion in March 2016 to re-establish visits but then failed to call to confirm his first visit. There was no evidence that the father had any contact with the minors after January 2016. The father contends that DCFS stopped bringing the minors for visits and because of the language barrier he did not understand what he needed to do to reinitiate contact with the caseworker and the minors. We do not find the father's argument persuasive because the father had made phone contact with the caseworker on numerous occasions throughout the course of these proceedings without the aid of an interpreter. While we do not dispute the father's need for an interpreter during court

10

proceedings, when being counseled by his attorney, and other matters requiring more complex dialogue, he had already demonstrated he understood enough English to use a telephone to schedule visitation and other appointments required as part of his service plan. For that reason, we agree with the trial court's finding that the father failed to maintain a reasonable degree of interest, concern or responsibility for the minors' welfare. Thus, the trial court's finding that the father was unfit was not against the manifest weight of the evidence. Since the State was only required to prove one ground of unfitness, it is not necessary to address the other grounds for unfitness.

¶ 24 Next, the father contends that the trial court's termination of his parental rights was against the manifest weight of the evidence. He testified that he loves the minors and has strong bonds with each of them, and he desires to raise them. He contends that it was DCFS that caused the instability by removing the minors from the home and not offering to allow the minors to visit at his home.

¶ 25 After a finding of unfitness, the lower court then shifts its focus to make a determination of what is in the best interest of the minor. *In re B.B.*, 386 Ill. App. 3d 686, 697 (2008). The State must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the minor. *Id.* at 698. We review the lower court's determination that it was in a minor's best interest to terminate a parent's rights using a manifest weight of the evidence standard. *Id.* at 697.

¶ 26 Courts must consider the following factors when making a best interest determination:

"(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

(b) the development of the child's identity;

(c) the child's background and ties, including familial, cultural, and religious;

11

(d) the child's sense of attachments ***;

*** 

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3(4.05) (West 2018).

¶ 27 The father does not specifically address in his appellate briefs any of the best interest factors considered by the trial court. The evidence shows that all the minors had been in foster care for five years at the time of the hearing. N.R. had been with the same foster family the entire time; A.T. and J.T. were placed together in a foster home for more than four years. The foster parents provide for the minors, and the two foster families wished to adopt the minors. Although the father testified as to his strong bonds with the minors and wish to raise them, he had not been a part of their lives for almost four years. We find that the trial court's determination that it was in the minors' best interest to terminate the father's parental rights was not against the manifest weight of the evidence.

¶ 28                                      CONCLUSION

¶ 29 The judgment of the circuit court of Rock Island County finding the father to be unfit and terminating his parental rights to the minors is affirmed.

¶ 30 Affirmed.